Swing, J.
This case is here on error to the judgment of the court of common pleas. It was an action in that court by Bethel against the Street Railway Company, for damages for injuries caused by Bethel being run over by one of the defendant’s cars. The case came to trial before a jury,and at the conclusion of the plaintiff’s evidence, the court, on motion of the defendant, directed the jury to return a verdict for the defendant. This it is claimed was error, as was also the act of the court in refusing, during the hearing of the plaintiff’s evidence, to permit the plaintiff to amend his petition and set up that the defendant was negligent in failing to provide an approved safety guard devise, by reason of which the plaintiff was injured.
The principal question in the case is whether, upon a consideration of the evidence, it tended to prove that the plaintiff was injured by reason of the negligence of the defendant.
The facts in the case are substantially as follows: Bethel was struck and knocked down and run over by a car of the defendant, two of his toes being crushed so as to require amputation, The casualty occurred between Freeman Avenue and Carr Street, one night in the city of Cincinnati. At this point there are two tracks of the railway on which cars run in opposite directions. Bethel was on the north side of the street, and attempted to cross the street when he was struck by the car, which was going east. A market wagon *383 was going west on the west track of the railway, and as this wagon passed, Bethel walked immediately in the rear of it on the east railway track, and right in front of the car.- There was no evidence which tended to show that the moterman saw Bethel approaching the crossing before he stepped on the track, nor was there any evidence which tended to show that after Bethel got on the track and the motorman saw his perilous condition, that he could by any means have avoided the accident. There was no evidence which tended to show that the car was run at a negligent rate of speed,or that if the speed was too high, that that was the approximate cause of the accident.
It seems to us that the admitted facts in this case bring ¡the question under the rule of law announced in the fourth •and fifth propositions of the syllabus in the Crawford case, fin 24 Ohio St., p. 681, which is as follows:
“4. In an action for damages for alleged negligence, the -question of'negligence on the part of the defendant, or of •contributory negligence on the part of the plaintiff, is a mixed question of law and fact, to be decided by the jury under proper instructions from the court.”
”5. But if all the material facts touching the alleged negligence be disputed, or be found by the jury and admit of no rational inference but that of negligence, in such case, the question of negligence becomes a matter of law merely,and the court should so charge the jury.”
And there ,ean 'be no rational inference in this ca$^, tyu,! rthat -the .aee'ident was caused by the negligence qjf ijljn? jj>l¡ai¡nitiff. Be stepped «pon the track right íd ^vgn,f[ qf i^e rand before doing so, he did pot takv, -ascertain whether a car was aggroaeliiV' ' 10 mot. The railway company ee»5*' on that track or .-guará against nM - - , "‘j n0‘ P°*“bIJ be ?” «>« ¿sum® that . - ”“cb -B ‘to- It had a right to K. between crossings no one would attempt to the track without first taking means to ascertain Whether a car was approaching or not. There is no evidence *384 tending to show that the motorman had any reason to think that any. one would attempt to cross the track as soon as the car passed the market wagon. While Bethel must have known* and was bound to know that a car might be coming from the direction which was not within his vision by reason of the market wagon between him and the direction of the approaching car, yet after the'passing of the market wagon he did nothing to inform himself as to whether a car might not be approaching on the track which he intended to cross,, but he stepped immediately on the track right in front of the car, so that it was impossible for the motorman to have stopped the car and have avoided the accident after Bethel came on the track.
It seems clear to us,beyond question, that the cause of the-accident was not by reason of any negligence of the street railway company, for one can not see what it could have done to have avoided it. And it seems equally clear to us that the accident was caused by the defendant’s failing to take precautions to inform himself whether a car was approaching on the track upon which he stepped, as a man of ordinary prudence, we think would have done.
It is said in the Schwartz ease, 8 C. C. 484 that courts would take judicial notice of how street cars are operated, for courts will not be ignorant upon matters of universal knowledge. It is stated in a Cincinnati Almanac that the street cars of Cincinnati carried during the year 1897, 60,000,000, passengers about 150 times the entire population, and it would .seem but reasonable to say, that probably nothing is of more universal knowledge m this city than the manner in which street cars are operated.
The substitution of the electric for the horse and cable-cars was largely caused, no doubt, by the demand of the-public for more rapid street car transportation. Street caraare in this day a public necessity, and can only be efficient when affording rapid transportation. The same distances ara *385 probably covered now in less than one half the time consumed by the old horse cars. In order to do this, the old custom of the horse cars, to stop at any point to take on or let off passengers, has been done away with, and regular stopping places have been established at street crossings and a few public places. Between crossings the cars are, ánd must be run at a rapid rate compared with the speed of the old horse car, but at the crossings the cars ■ must be under control. Judge Spear, speaking for the court in the case of the Cincinnati St. Ry. Co. v. Snell, 54 Ohio St., 205,says: “* * gives the foot passenger such a right at street crossings as to make it the duty of drivers of vehicles, whether wagons, wheels, or cars, to so regulate their speed, and give such warning of approach at whatever cost of pains and trouble on their part, as that the foot man using ordinary care himself and barring inevitable accident, may cross in safety.” The rule between crossings must be different. The footman knows that at these points the cars run at a high rate of speed; they are not under control, and can not be stopped instantlj, and furthermore the motorman has no reason to apprehend that a footman between crossings will carelessly and without first observing put himself on the track of the railway, for men of ordinary prudence do not do this. It is no hardship upon the footman to require him to take this precaution to guard against approaching cars between crossings; if this was not required of him,rapid transit could not be had, and the great body of the public would be greatly injured. These remarks however are made solely with reference to the facts in this case.
As to the other question, whether the court erred in refusing to grant the plaintiff leave to amend his petition. We are of the opinion that there was no abuse of the discretion vested in the judges. It does not appear that the cars were not provided with proper guards, and it does not appear that any known guards or proper guards would have *386 avoided the accident, and it does not appear bnt what all the facts wanted to be set up were not well and accurately known to the plaintiff long before the case came to trial.
Joseph Cox, Jr. and W. E. Bundy, for Plaintiff.
J. W. Warrington, for Defendant.
For these reasons the judgment of the court of common pleas is affirmed.